OPINION
{¶ 1} Petitioner-appellant Teresa J. Wine appeals from the September 17, 2004, Judgment Entry of the Delaware County Court of Common Pleas which reallocated parental rights and responsibilities pertaining to her minor son, Jeremy. Petitioner-appellee is Dennis Lee Wine, Jeremy's father.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant and appellee, who are originally from Illinois, were married in Illinois on November 5, 1988. Two children were born as issue of the marriage, a daughter, Samantha (d.o.b. 9/20/91), and a son, Jeremy, (d.o.b. 9/27/94). Both children were born in Illinois.
 {¶ 3} In 1999, after several changes of jobs by appellee and resulting changes of residences in Illinois, appellee obtained a job in Ohio. Thereafter, appellee moved to Ohio. Appellant, who worked for State Farm, had been able to transfer to various offices as appellee changed jobs and locations and was able to transfer to Ohio, thereby following appellee to Ohio.
 {¶ 4} Subsequently, the marriage between appellant and appellee was dissolved by Decree on February 2, 2001, in Delaware County. Appellant, the mother, was named the sole residential parent and legal custodian of both children. Appellee, the father, was granted visitation. Appellee was ordered to pay child support.
 {¶ 5} After the dissolution, appellant remained in the marital home in Westerville, Ohio. Appellee moved to Powell, Ohio, about ten minutes away from the marital home. In July, 2001, appellee moved to Lake Choctaw, near London, Ohio. Lake Choctaw was about 45 — 50 minutes from the children's home in Westerville. Thereafter, in the early part of 2002, appellant moved to Mason, Ohio, which is near Cincinnati. Subsequent to these moves, appellant filed a motion to modify visitation and appellee filed a motion for shared parenting. Ultimately, both parties signed an Agreed Judgment Entry, filed June 10, 2002, which modified the time sharing arrangement. The Agreed Judgment Entry also provided as follows:
 {¶ 6} "The Wife has remarried. The Wife's current Husband lives near Chicago, Illinois. There is a likely chance that the Wife will seek to move to Illinois in the summer of 2003. If the Wife elects to move out of state, the Wife shall file a relocation notice. The Wife is restrained from moving out of state for the first 90 days after the filing of such a relocation notice. The Magistrate in this case declined to hear the merits of reallocation of parental rights and responsibilities based on the Wife's potential move to Illinois. The Wife's filing of a relocation notice shall be considered a substantial change of circumstances and this entry is without prejudice to any arguments that either party may have at such time." June 10, 2002, Judgment Entry, pgs. 2 — 4.
 {¶ 7} Appellant's new husband, mentioned in the Agreed Judgment Entry, is an attorney who lives and works in Illinois. Appellee also re-married. He married a fellow employee who had lived in Rhode Island but pursuant to the relationship, relocated to Ohio. Each party has now had a child by their current spouse.
 {¶ 8} On November 20, 2002, pursuant to the June 10, 2002, Judgment Entry, appellant filed a notice of intent to relocate to the St. Charles, Illinois, area and a motion to modify visitation because of the intended move. Then appellee filed a motion for a change of custody and motions for a custody evaluation and the appointment of a guardian ad litem. By Magistrate's Order filed January 10, 2003, Dr. Jeffrey Smalldon was appointed to do a custody evaluation and Terrie L. Clinger was appointed as Guardian Ad Litem. On May 13, 2003, appellant filed a motion for permission to move to Illinois with the children.
 {¶ 9} A hearing on all pending motions was held before a Magistrate on September 3, 4, and 5, 2003. On September 5, 2003, the Magistrate interviewed each child individually, in the company of the guardian ad litem. The Magistrate issued a Decision on December 3, 2003. In that Decision, the Magistrate found that appellant's contemplated move back to Illinois was a change of circumstances and that the parties' two minor children should be separated, with the parties' son going to live with appellee and their daughter continuing to live with appellant.
 {¶ 10} Appellant filed objections to the Magistrate's Decision. Subsequently, appellant filed a request for the trial court to interview the children. As a result, the trial court interviewed both children. The children were again interviewed individually, in the company of the guardian ad litem.
 {¶ 11} On September 17, 2004, the trial court issued its ruling on objections and a final Judgment Entry. The trial court ordered that the minor children would be separated, with the parties' son going to live with appellee once appellant left the State of Ohio, and their daughter continuing to live with appellant.
 {¶ 12} It is from the September 17, 2004, Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 13} "I. The court erred to the prejudice of the appellant and abused its discretion in finding that there was a change of circumstances that warranted a reallocation of parental rights and responsibilities as to jeremy.
 {¶ 14} "II. The court erred to the prejudice of the appellant and abused its discretion in determining that it was in the best interest of the minor children to be separated from each other.
 {¶ 15} "III. The court erred to the prejudice of the appellant and abused its discretion in determining that the harm likely to be caused by a change of environment is outweighed by the advantages that a change of environment would have on the minor child."
 {¶ 16} "IV. The court erred to the prejudice of the appellant and abused its discretion in determining that it was proper to reallocate parental rights and responsibilities relying on the report of the guardian ad litem and the court appointed custody evaluator."
 {¶ 17} This case comes to us on the accelerated calender. Appellate Rule 11.1, which governs accelerated calender cases, provides, in pertinent part as follows: "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 18} This appeal shall be considered in accordance with the aforementioned rule.
 {¶ 19} Each of appellant's assignments of error concern the reallocation of parental rights. Revised Code 3109.04 concerns the reallocation of parental rights. That statute provides as follows, in pertinent part:
 {¶ 20} "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 21} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 22} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 23} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 I {¶ 24} In the first assignment of error, appellant contends that the trial court erred to the prejudice of appellant and abused its discretion when it found that there had been a change of circumstances that warranted a reallocation of parental rights and responsibilities as to the parties' son, Jeremy. We disagree.
 {¶ 25} The standard of review for a determination of whether there has been a change of circumstances is abuse of discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159. When applying an abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. On the contrary, where there exists competent credible evidence to support an award of custody, there is no abuse of discretion. Davis, 77 Ohio St.3d at 418, 674 N.E.2d 1159. This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. Davis, 77 Ohio St.3d at 419,674 N.E.2d 1159.
 {¶ 26} We will now address appellant's assignment of error. Appellant challenges the trial court's finding of a change of circumstances. The Ohio Supreme Court considered what constituted a change of circumstance in Davis v. Flickinger, supra at 418-419. In Davis, the Ohio Supreme Court held as follows:
 {¶ 27} "[T]he change must be a change of substance, not a slight or inconsequential change. The nomenclature is not the key issue. As theWyss court aptly stated:
 {¶ 28} "`The clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'" Wyss v. Wyss,3 Ohio App.3d 412, 416, 445 N.E.2d 1153, 1157.
 {¶ 29} Appellant argues that it appears that the trial court conceded that appellant's move out of state alone did not constitute a change of circumstances, but found that the other circumstances created a change of circumstances. Appellant also argues that since the children are doing well in appellant's care, the trial court's decision is not in keeping with the goal of stability in a child's life.
 {¶ 30} In finding a change of circumstance, the trial court stated as follows:
 {¶ 31} "Custody was awarded to the Wife in the decree of dissolution on February 2, 2001. At that time, Samantha was age 9 and Jeremiah was age 6. At the time of the dissolution, the Wife remained living in the marital residence in Westerville, Ohio and the Husband moved to an apartment, 10 minutes away, in Powell, Ohio.
 {¶ 32} "After the dissolution, the Husband's significant other from the time of the breakup of the marriage, Nicole, moved to the Cincinnati, Ohio area from New Jersey to be closer to the Husband. Nicole works for the same company as the Husband as a sales representative. Nicole was able to get her area changed from New Jersey to the Cincinnati, Northern Kentucky area. The Husband then purchased a residence on Choctaw Lake near London, Ohio to be closer to Nicole. Choctaw Lake was 40 — 45 minutes away from the children in this case. Nicole moved in with the Husband in July of 2001. Nichole [sic] has a daughter from a prior marriage, Maggie, who is about the same age as Jeremiah. Maggie moved with Nicole to Ohio and to Choctaw Lake. The Husband and Nicole were married on July 4, 2002 and they have a child, Aiken, born April 24, 2003.
 {¶ 33} "In the spring of 2002, the Wife's employment was moved from the Newark/Columbus area to Cincinnati. The Wife moved to Mason, Ohio. The children had to start new schools in the middle of the school year. The children became well acclimated to the Mason area. The Husband made special steps to visit with the children after they moved to the Mason area including exercising week-night visitation by getting a hotel room in the Mason area and staying with the children overnight. After the dissolution, the Wife renewed a relationship with Bill Porter and they were married in April of 2002 and had a child, David, in September of 2002. Meanwhile the Wife lost her employment in Cincinnati in August of 2003. Bill Porter is the managing partner of a law firm consisting of 12 partners and 24 other attorneys and has income in excess of $300,000.00 per year.
 {¶ 34} "The Wife announced her intention to move to Chicago. The move to Chicago was not a possible move, but was a certain move. The Wife had remarried. It is impossible for the Wife's new husband to relocate his practice to Ohio. The Wife has no employment or family in the Ohio area. The Wife is from Illinois, has family in Illinois, has lived a substantial part of her adult life in Illinois (the Wife only lived in Ohio since April of 1999), and her current husband has a home and is well-established in the Illinois area.
 {¶ 35} "At the time of the hearing herein Samantha was age 12 and Jeremiah was age 9, soon to be 13 and 10. The Husband at first moved further away from the children. Then the Husband moved another woman and her child into his residence, married that woman, and has had a third child. The children of this case became well interrelated with Nicole, Maggie, Aiken, the Husband's new residence, and the area in which the Husband lives.
 {¶ 36} "The Wife then moved to Mason in the [sic] January of 2002. The children became well integrated into the school and community in Mason. The Husband took significant steps to participate in his children's lives and exercise companionship after the move to Mason. The Wife became involved with Bill Porter, became pregnant, married Mr. Porter, and had another child. The children have become interrelated with Mr. Porter, his two older children, David, and Mr. Porter's residence. However, the relationship with Mr. Porter is not as strong as the relationship with Nicole as Mr. Porter lives in Illinois and the Wife lives in Mason, Ohio. In addition, the Wife lost her employment in Ohio and is certain to move to the Chicago area. Thus there has been a change of circumstances of the children and the Wife.
 {¶ 37} "As pointed out by the Husband in his Response to the Wife's objections, in the Judgment Entry dated June 10, 2002 the Parties agreed that the Wife's subsequent move to the Chicago, Illinois would be a substantial change of circumstances. . . ." Ruling on Objections, pages. 2-4.
 {¶ 38} Upon review, this Court finds that the trial court did not abuse its discretion when it found a change of circumstances. The facts show that, among other changes, the parties have each remarried, had an additional child and moved more than once. We find that the trial court did not abuse its discretion when it found a change of circumstances.[1]
 {¶ 39} Appellant's first assignment of error is overruled.
 II {¶ 40} In the second assignment of error, appellant argues that the trial court abused its discretion when it determined that it was in the best interest of the children that they be separated from each other. We disagree.
 {¶ 41} Once again, the standard of review is abuse of discretion.Davis v. Flickinger (1997), 77 Ohio St.3d 415, 416-417, 674 N.E.2d 1159. A reviewing court, therefore, will not reverse a trial court's finding of a change of circumstances absent an abuse of discretion. Id.
 {¶ 42} Revised Code 3109.04 provides relevant factors in determining the best interest of a child:
 {¶ 43} "(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 44} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 45} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 46} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 47} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 48} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 49} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 50} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 51} "(h) Whether either parent previously has been convicted of or pleaded guilty to [certain enumerated] offense[s]. . . ."
 {¶ 52} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 53} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 54} In making its decision, the trial court held as follows:
 {¶ 55} "The Wife stresses that she has been the primary caretaker of the children and that Samantha and [Jeremy] should not be separated. Section 3109.04 lists 10 factors that the court should consider in determining the best interest of the children. The Magistrate's Decision reviewed each of these factors from page 14 — 17. The Court re-interviewed the children. [Jeremy] did indicate reservations about leaving his mother and stated as a reason that he did not want to be split from his sister. However, the Court could not ascertain specific factors that would lead to a change in the magistrate's decision. The guardian ad litem was also present for the interviews and did not change her opinion." Ruling on Objection, pgs. 4-5.
 {¶ 56} We note that the trial court refers to the Magistrate's Decision, pages 14-17 and the guardian ad litem's recommendation. A review of pages 14-17 of the Magistrate's Decision reveals that, after citing the factors to be considered, as provided in R.C. 3109.04(F), the Magistrate made the following findings:
 {¶ 57} "The Court has interviewed the children. Both children have good interaction and interrelationship with the child's parents, each other, step-siblings, halfsiblings, and step parents. Currently, the children are well adjusted to the Wife's home, school, and community in Mason, Ohio. The children have a good adjustment to the Father's home and community in Choctaw Lake due to visitation. The children have not moved to Chicago and there is no adjustment to the school and community in Chicago. All persons are of good mental and physical health. Both parents are equally likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. The Husband is current in child support. Neither parent has done any act that would violate Section3109.04(F)(1)(h). Neither parent has has [sic] continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court. The Wife is planning to establish a residence in the Chicago, Illinois area. The Parties have the ability to cooperate and make decisions jointly, with respect to the children. Each parent has the ability to encourage the sharing of love, affection, and contact between the child and the other parent. There is no history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent. After the Wife moves to the Chicago, Illinois area, the Parties will be approximately 370 miles and 6 — 8 hours apart driving time. The guardian ad litem recommended that the Wife be awarded custody of Samantha and that the Husband be awarded custody of Jeremy. The court also reviewed the extensive report of Dr. Jeffrey Smalldon that recommended custody of the children be awarded to the Husband.
 {¶ 58} "Both of the parents are excellent parents to the children. The Wife has been the primary caretaker of the children since birth.
 {¶ 59} "Samantha is a real talent in looks, intelligence, feeling emotion, love (for her families), and love for horses. There are bonds between the mother and Samantha that are very unique. The insight and effort that Teresa can devote to Samantha cannot be matched anywhere else. Samantha has her best chance at developing her multiple talents by living with her mother. It is not in the best interest of Samantha to modify custody.
 {¶ 60} "Jeremy can best be described as being "all-boy." Living on a lake in a neighborhood with many friends and with his father who can spend sporting time with Jeremy is an ideal arrangement for Jeremy. The move to Chicago will significantly impact the relationship of Jeremy with his Father. It is in the best interest of Jeremy to modify custody. The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." Magistrate's Decision, pg. 5, 14-17.
 {¶ 61} The guardian ad litem supported the separation of the children. At the conclusion of the evidence presented at the hearing before the Magistrate, the guardian ad litem stated as follows:[2]
 {¶ 62} "My first choice recommendation, to be honest with you, would be that everybody move to Illinois where your family is at and the kids could continue to have this contact with the parents, but his court doesn't have the jurisdiction to order Dennis to move to Illinois.
 {¶ 63} . . .
 {¶ 64} "[I] struggled very much over the last three days, last night and then in talking with the kids, I think that if I were to make a recommendation to the court at this point, my recommendation would be that they allow Teresa to go to Illinois but that they, that the court consider the change of custody that Dennis has filed in regards to Jeremy remaining with him and Sam being with Teresa. And I think the factors that I looked at is [sic] their ages and their relationship, that Sam needs to have with her mom as a teenager and the relationship that, that Jeremy needs to have with his father, I think that's a significant need for him and so that would be my recommendation. And I have to tell you that probably in 16 years of doing this, I don't know if I can ever remember even considering recommending that two siblings be separated, so I didn't take this recommendation, I don't take it very lightly. I didn't make it very lightly." Transcript of Hearing before Magistrate, pgs. 479-481.
 {¶ 65} Although this decision may or may not have been the decision this court would have made, this court cannot substitute its judgment for that of the trial court. Rather, this court is constrained to apply an abuse of discretion standard of review. Upon review, we find no abuse of discretion. The trial court considered the statutory factors and exercised its discretion to resolve this difficult situation.
 {¶ 66} Appellant's second assignment of error is overruled.
 III {¶ 67} In the third assignment of error, appellant contends that the trial court abused its discretion when it determined that the harm likely to be caused by a change of environment is outweighed by the advantage that a change of environment would have on Jeremy. We disagree.
 {¶ 68} The standard of review is abuse of discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416-417, 674 N.E.2d 1159. A reviewing court, therefore, will not reverse a trial court's finding of a change of circumstances absent an abuse of discretion. Id.
 {¶ 69} In overruling appellants' objection regarding the Magistrate's finding that the harm likely to be caused by a change of environment to Jeremy is outweighed by the advantages of the change of environment to Jeremy, the trial court held as follows:
 {¶ 70} "The Wife stresses that [Jeremy] is thriving in her custody. The court does not deny that [Jeremy] is thriving in the Wife's custody. However, the Magistrate's Decision shows that due to the relationship of [Jeremy] with the Husband, Nicole, Maggie, Aiken, Choctaw Lake, and the school, very little harm, if any, will be caused by the change of environment and any such harm is outweighed by the advantages of the change of environment to the child. This finding . . . is supported by the opinions of Dr. Smalldon and Terrie L. Clinger, the guardian ad litem." Ruling on Objections, pg.5.
 {¶ 71} Dr. Smalldon recommended that, should appellant move out of state, the children should remain in Ohio with appellee. The guardian ad litem recommended that the daughter should remain with appellant and the son should live with appellee. Implicit in both recommendations is that the harm likely to be caused by the recommended changes in environment is outweighed by the advantages of the change of environment to the child(ren).
 {¶ 72} Upon review, we find no abuse of discretion.
 {¶ 73} Accordingly, appellant's third assignment of error is overruled.
 IV {¶ 74} In the fourth and final assignment of error, appellant contends that the trial court abused its discretion when it determined that it was proper to reallocate parental rights and responsibilities by relying upon the report of the guardian ad litem and the court appointed evaluator. Specifically, appellant contends that this is an abuse of discretion because the trial court relies upon the guardian ad litem's ultimate recommendation, that Jeremy live with his father, and totally overlooks the rest of the guardian's report which states that 1) appellant has been a remarkably good mother, 2) if appellant would remain in Ohio, appellant should continue to be the residential parent for both children, and 3) the best solution to this issue would be for both families, appellant's family and appellee's family, to move to Illinois. Appellant contends that what the guardian ad litem did was to essentially divvy up the children fairly and such a result is not in the children's best interest.
 {¶ 75} We find no abuse of discretion. This was obviously a difficult decision for all involved. In making such decisions, a trial court has discretion to follow or reject the recommendation of a guardian ad litem or an expert. When the recommendations and findings of the guardian ad litem and the court appointed custody evaluator are reviewed in toto, we find no abuse of discretion by the trial court.
 {¶ 76} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 77} The judgment of the Delaware County Court of Common Pleas is affirmed.
Edwards, J. Gwin, P.J. and Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Domestic Realtions Division, is affirmed. Costs assessed to appellant.
[1] In deciding that the facts themselves demonstrate a change of circumstances, there is no need to address appellant's arguments concerning whether a move out of state alone constitutes a change of circumstances nor the effect of the Agreed Judgment Entry of June 10, 2002.
[2] The guardian ad litem filed a written report prior to the hearing before the Magistrate. However, in that written report, the guardian ad litem reserved any recommendation until presentation of evidence by both parties at the hearing.