[Cite as *in re K.A.*, 2021-Ohio-1773.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: K.A. | : | JUDGES:<br>Hon. Craig R. Baldwin, P.J.<br>Hon. W. Scott Gwin, J.<br>Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2021 CA 00004 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Civil appeal from the Fairfield County Court of Common Pleas, Juvenile Division, Case No. 2019 AB 0059

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      May 24, 2021

APPEARANCES:

For: Appellee

R. KYLE WITT
Prosecuting Attorney
By: GENYLYNN COSGROVE
Assistant Prosecuting Attorney
239 West Main Street, Ste 101
Lancaster, OH 43130

For: Mother

WILLIAM J. HOLT
2140 Lancaster-Newark Rd N.E.
Lancaster, OH 43130

*Gwin, J.*

{¶1} Appellant A.C. appeals the December 17, 2020 judgment entry of the Fairfield County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of K.A. to Fairfield County Child Protective Services ("FCCPS").

*Facts & Procedural History*

{¶2} A.C. is the mother ("Mother") of K.A., born on May 9, 2019. J.A. is the father ("Father") of the child.

{¶3} On May 16, 2019, FCCPS filed a complaint for abuse and/or dependency with regards to K.A. The complaint alleged, in part: Mother and K.A. tested positive for heroin at the time of K.A.'s birth; Mother has a significant history of using both methamphetamines and opiates; Father has a significant history of substance abuse of both heroin and methamphetamines; Father refused to submit to a random drug screen on May 14, 2019; and Father admitted to using methamphetamine and heroin "a couple days ago." K.A. was placed in the temporary custody of FCCPS on May 16, 2019.

{¶4} The trial court found K.A. dependent on August 7, 2019. Neither parent contested the finding of dependency. The trial court granted the agency's motion to extend temporary custody in May of 2020.

{¶5} The trial court originally appointed Natalie Noyes as guardian ad litem in the case in May of 2019. On June 4, 2020, Noyes filed a motion to withdraw as GAL. The trial court granted the motion, and appointed Amanda Morris as the guardian ad litem on June 9, 2020. Noyes filed a report in July of 2019, stating that she attempted to contact both Mother and Father via phone calls and letters, but the phone numbers of both

parents were disconnected and, despite the letters not being returned, neither Mother or Father contacted her.

{¶6} FCCPS filed a motion for permanent custody on August 11, 2020. Paternal grandparents filed a motion for legal custody on August 17, 2020. The trial court set a hearing for December 9, 2020. The GAL filed a report on December 2, 2020, opining that it is in the best interest of K.A. for permanent custody to be granted to FCCPS. The GAL stated she spoke with the foster parents, the paternal grandparents, and caseworkers, but "did not make contact with Father or Mother due to their continued incarceration during my involvement in this matter. However, I have had contact with Mother through my involvement with an older sibling."

{¶7} Father filed a motion to continue the hearing on December 7, 2020 because the GAL did not meet with Father as required by Rule of Superintendence 48. The trial court denied the motion on December 7, 2020, stating "whether or not the Guardian ad Litem fulfilled her duties under Superintendence Rule 48 is not a proper basis for a continuance of a permanent custody hearing. Counsel for Father may cross-examine the Guardian ad Litem as to her investigation into this matter at the hearing. The Court will then give the report the weight it deserves in making the determination as to what is in the best interest of the child."

{¶8} The parties submitted written stipulations prior to the hearing. Both Mother and Father stipulated that K.A. has been in the temporary custody of FCCPS for twelve or more months of a consecutive twenty-two-month period.

{¶9} At the hearing, counsel for Mother indicated he would be taking no position on the motion for permanent custody, as he had not had contact with Mother for an

extended period of time. During the virtual hearing, Mother called in. She was permitted to speak with her attorney. Mother directed her attorney to tell the trial court that she was aware of the hearing and that she did not want to participate in the hearing.

{¶10} Bailey Cunningham ("Cunningham") was the ongoing caseworker for Mother's first child. Mother never made significant progress with her case plan, so FCCPS was granted permanent custody of the child in 2019.

{¶11} Caitlin Huffstutler ("Huffstutler") was the intake worker for K.A. FCCPS initially became involved with the family because Mother tested positive for heroin and opiates upon her admission to the hospital, and K.A. tested positive for opiates when he was born. Mother initially gave Father's name as a placement for K.A., but Father refused to drug test when he met with Huffstutler and admitted he used heroin and meth several days prior. When Huffstutler picked up K.A. from the hospital, there was a security concern that paternal grandmother may try to come to the hospital to pick up the child herself. After K.A. was released from the hospital, Huffstutler attempted to contact Father, but could not get in touch with him. The case was then transferred to the ongoing case unit.

{¶12} Jessica Caldwell ("Caldwell") is the parenting time monitor in this case. K.A. went on visit status with Mother on March 21, 2020. However, this was revoked in April of 2020 when Mother was arrested on a probation violation. Mother went back to supervised visits with K.A. until July 22, 2020 when she went back to jail. FCCPS generally does not do visits with parents when they are incarcerated when the children are as young as K.A. is. Mother is now living with her boyfriend, who was recently indicted on a felony drug trafficking charge.

{¶13} Rachel Weygandt ("Weygandt") has been the ongoing caseworker for K.A. since June of 2019.

{¶14} Mother's case plan required her to: meet with the caseworker monthly, maintain housing, maintain employment, participate in the call-in drug screening program with American Court Services, complete a mental health and substance use disorder assessment and follow all recommendations, and participate in consistent parenting time with K.A.

{¶15} From June until September of 2019, Mother lived in a women's shelter. She then obtained housing at The Pearl House. Mother will be evicted from The Pearl House at the end of the month, so is staying with her boyfriend, who has felony drug trafficking charges pending. Weygandt agreed to schedule a walk-through of Mother's boyfriend's home; however, Mother never returned her call. Mother works at IHOP, with inconsistent income. Mother reported to Weygandt it is difficult for her to maintain and provide for her basic needs because Mother does not have a driver's license. Weygandt attempted to help Mother get employment closer to home, but it did not work out.

{¶16} On March 20, 2020, because of COVID visitation restrictions, FCCPS decided to put K.A. on visit status with Mother and monitor them closely. On April 15, 2020, Weygandt was contacted by Mother's probation officer and informed Mother tested positive for meth and heroin, so visitation was revoked. After Mother was released from jail for the second time in October or November of 2020, she has not been compliant with her case plan.

{¶17} Weygandt detailed the reasonable efforts FCCPS has made since 2019 in attempts to help Mother. Due to her continued substance abuse issues and lack of

compliance with the case plan, Weygandt does not believe Mother is able to care for K.A. at this point in time.

{¶18} FCCPS completed two kinship assessments on Mother's family, one for her sister and one for her brother. The brother's assessment was approved, but the sister's assessment was denied due to criminal history. After five visits with Mother's brother, he determined he could not care for K.A. and withdrew his kinship application.

{¶19} During one unannounced visit when Mother had unsupervised visitation in October of 2019, Weygandt found Father hiding in K.A.'s closet under some clothes, despite the fact that Mother was not supposed to have any contact with him. In January of 2020, Weygandt had concerns about the parents' honesty because she saw Father and Mother in a car together, but they denied they were together.

{¶20} K.A. has been placed in the same foster home since several days after his birth. The foster family adopted Mother's first child. Weygandt has observed K.A. in the foster home on a monthly basis. K.A. is very bonded with both foster parents and his sibling. K.A. is thriving in the foster home. K.A. has been in the temporary custody of the agency since May of 2019.

{¶21} While FCCPS has tried to work to reunify K.A. with Mother, that has not come to fruition. Weygandt testified that K.A. deserves to have a home where he can feel safe and allow him to thrive. Neither Mother nor Father can currently provide K.A. with a legally secure permanent placement. Thus, Weygandt believes is in the best interest of K.A. to grant permanent custody to FCCPS.

{¶22} Counsel for Father and counsel for Mother each cross-examined the GAL about her report.

{¶23} Based on everything she heard at the hearing, the GAL's opinion has not changed from her report recommending that granting permanent custody to FCCPS is in the best interest of K.A.

{¶24} The trial court issued a judgment entry on December 17, 2020 granting FCCPS's motion for permanent custody, terminating the parental rights of Mother, terminating the parental rights of Father, and placing K.A. in the permanent custody of FCCPS.

{¶25} As to Mother's case plan, the trial court found she has not had consistent contact with FCCPS; has not successfully completed the objective of maintaining stable housing; did not successfully complete the call and screen portion of her case plan, as she was jailed multiple times for using heroin and meth, missed 113 tests, and of the 9 tests she completed, was positive on 8; did not successfully complete the treatment portion of her case plan, as she has not participated in continuous recovery services; has not successfully completed the parenting time objective, as she was arrested for a positive drug screen when K.A. was on overnight visits status and her choices (such as living with her boyfriend who has pending felony charges) have not allowed for expansion of visitation due to safety concerns.

{¶26} While Mother has maintained stable employment at IHOP and substantially complied with that objective, this compliance is fragile due to her lack of driver's license and felony convictions.

{¶27} The trial court found FCCPS exerted diligent and reasonable efforts to assist Mother in remedying the problems that caused K.A. to be removed from the home, but these services have not prevented the need for removal of the child or enabled the

child to return safely home. Further, that Mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

{¶28} The trial court determined K.A. is bonded with his foster family and his needs are being met in their home. The child has lived with the foster family since he was seven days old, and has continuously resided with them, except for March 20, 2020 through April 15, 2020, when the child was on visit status with Mother.

{¶29} When discussing the GAL's report, the trial court specifically stated in its opinion, "the Court has taken into consideration the concerns of parties as to the investigation of the GAL and gives the GAL report the weight it deserves."

{¶30} As to the first prong of permanent custody, the trial court found the parties stipulated K.A. was in the temporary custody of FCCPS for twelve or more months of a consecutive twenty-two-month period, beginning on May 16, 2019 through the filing of the motion for permanent custody on August 11, 2020. Further, that Mother abandoned the child by failing to have contact from July 22, 2020 through October 29, 2020 while she was incarcerated and Father abandoned the child by failing to have contact from June 30, 2020, through October 13, 2020 because he was incarcerated. The court found, by clear and convincing evidence, R.C. 2151.414(B)(1)(b) and (d) applies to both Mother and Father.

{¶31} The trial court then went through each of the applicable best interest factors detailed in R.C. 2151.414(D)(1) and found as follows: (a) Mother's addiction and poor choices have prevented her from bonding with K.A.; Mother has not visited consistently since her incarceration; Mother chose not to contest the permanent custody; the child is bonded with his foster parents; K.A. resides with his half-sibling; (b) the child is too young

to express his wishes; (c) the child has been with the foster parents since May 16, 2019, and was only at Mother's for 25 days during that period;  (d) K.A. needs a safe and stable environment where K.A.'s needs are met on a consistent basis; K.A. cannot find legally secure placement with Mother because she has failed to follow through with treatment recommendations, has been repeatedly incarcerated, and failed to secure stable housing; no kinship placements were approved, despite being explored by FCCPS; (e) Mother abandoned the child due to her incarceration; Mother had her parental rights involuntarily terminated with respect to K.A.'s sibling; and (f) Mother did not contest the permanent custody motion.

{¶32} Utilizing these factors, the trial court found, by clear and convincing evidence, it is in the best interest of K.A. to be committed to the permanent custody of FCCPS.  The trial court granted the motion of FCCPS for permanent custody and terminated the parental rights of Mother.

{¶33} Mother appeals the December 17, 2020 judgment entry of the Fairfield County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶34} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT REQUIRING THE GUARDIAN AD LITEM TO SUBSTANTIALLY COMPLY WITH HER DUTIES UNDER OHIO REVISED CODE 2151.281 AND RULE 48.03 OF THE OHIO RULES OF SUPERINTENDENCE."

*Permanent Custody*

{¶35} "[T]he right to raise a child is an 'essential' and 'basic' civil right."  *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405

U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).  An award of permanent custody must be based on clear and convincing evidence.  R.C. 2151.414(B)(1).

{¶36}  Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).  "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *Id.* at 477.  If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶37}  Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact.  *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well."  *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶38}  R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody.  R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶39}  Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶40}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. In this case, the parties stipulated that K.A. has been in the temporary custody of FCCPS for twelve or more months of a consecutive twenty-two-month period. Additionally, the trial court found Mother abandoned K.A. by failing to have contact from July 22, 2020 through October 29, 2020 while she was incarcerated

I.

**{¶41}** Mother contends the trial court committed error by admitting the GAL's report and testimony into evidence because the GAL did not substantially comply with her duties. Specifically, Mother argues the GAL was required to interview Mother and observe her with K.A., and the GAL's failure to do to so deprived Mother of her due process rights.

{¶42} We first note that Mother did not appear for the permanent custody hearing. Additionally, Mother did not object to the GAL's testimony, or to the admission of her report. The only objection counsel for Mother made regarding the GAL's testimony and report came in closing arguments, when he argued the GAL did not substantially comply with her duties.

{¶43} R.C. 2151.281 governs a GAL's duties and provides the GAL "shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency * * *." There is no specific requirement contained in R.C. 2151.281 that a GAL must interview the parents or observe them with the child. R.C. 2151.281 instructs the Ohio Supreme Court to adopt rules regarding the duties a GAL should perform when protecting the interest of a child. The Ohio Supreme Court has done so in Superintendence Rule 48.

{¶44} Rule 48(D) of the Ohio Rules of Superintendence is a lengthy statement of the basic responsibilities of a GAL serving in an Ohio court, which are to be performed "unless impracticable or inadvisable to do so." These responsibilities include representing the best interest of the child for whom the GAL is appointed, maintaining independence, objectivity, and fairness, acting as an officer of the court, participating in pertinent hearings, resolving any conflicts of interest that may arise, meeting qualifications and training requirements, making reasonable efforts to become informed about the case, contacting the parties, maintaining confidentiality, and numerous other considerations.

{¶45} We have recognized that Superintendence Rule 48 is a general guideline that does not have the force of statutory law, and therefore an appellant does not have

any substantive right to enforce it. *In the Matter of D.S.*, 5th Dist. Fairfield No. 15 CA 30, 2016-Ohio-79, *Rice v. Rice*, 5th Dist. Delaware No. 10 CAF 11 0091, 2011-Ohio-3099. In general, the Ohio Rules of Superintendence are "purely internal housekeeping rules which do not create substantive rights in individuals or procedural law." *Elson v. Plokhooy*, 3rd Dist. Shelby No. 17-10-24, 2011-Ohio-3009.

{¶46} Further, most importantly for purposes of due process, the GAL was present at the evidentiary hearing and testified. K.A. was represented by counsel separate from the GAL. Counsel for Mother, counsel for Father, and counsel for K.A. all had the opportunity to cross-examine the GAL. Due process requires notice and the opportunity to be heard. *State v. Hayden*, 96 Ohio St.3d 211, 773 N.E.2d 502 (2002). Here, Mother had notice of the GAL's report and was given the opportunity to be heard on the contents of the report. Mother chose not to appear for the hearing. Her counsel was given the opportunity to cross-examine the GAL about her report, and did so at the hearing.

{¶47} Additionally, the trial court, as the trier of fact, is permitted to assign weight to the GAL's testimony and recommendation and to consider it in the context of all the evidence before the court. *In the Matter of D.S.*, 5th Dist. Fairfield No. 15 CA 30, 2016-Ohio-79, *In re T.C.*, 6th Dist. Lucas No. L-15-1106, 2015-Ohio-3665, *In re M.Z.*, 9th Dist. Lorain No. 11CA010104, 2012-Ohio-3194. The decision of whether to consider a GAL report, even when the guardian did not fully comply with Superintendence Rule 48, is within a trial court's discretion. See *Corey v. Corey*, 2nd Dist. Greene No. 2013-CA-73, 2014-Ohio-3258.

{¶48} In this case, the trial court specifically addressed the objections made to the GAL report by the parties and stated it "has taken into consideration the concerns of the

parties as to the investigation of the GAL and gives the GAL report the weight it deserves." Additionally, from the trial court's detailed judgment entry, it is clear the decision was not based upon the lack of the GAL's viewing of the interactions between K.A. and Mother, as several other witnesses testified Mother had positive visits with K.A. The trial court listed numerous other factors taken into consideration for its determination.

**{¶49}** Upon our review of the record, we find the trial court did not abuse its discretion in its treatment of the testimony and report of the GAL. Superintendence Rule 48 does not create substantive rights. The trial court specifically addressed the issue in the judgment entry, and we can find no reversible error, particularly where the trial court has the discretion to follow or reject any recommendation of a GAL. *Wine v. Wine*, 5th Dist. Delaware No. 04 CA F 10, 068, 2005-Ohio-975.

**{¶50}** Mother's assignment of error is overruled.

{¶51} The December 17, 2020 judgment entry of the Fairfield County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, J.,

Baldwin, P.J., and

Delaney, J., concur