[Cite as *In re J.J.*, 2022-Ohio-4196.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: J.J. | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 22CA08 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Knox County Court of
                               Common Pleas, Juvenile Division, case
                               no. 221-2070

JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT ENTRY:        November 22, 2022

APPEARANCES:

For Appellee Agency:                    For Appellant Mother:

ASHLEY JOHNS                            MARY LOU RANNEY
Knox Co. DJFS                           401 W. High St.
117 East High St.                       Suite 7
Mount Vernon, OH 43050                  Mount Vernon, OH 43050

*Delaney, J.*

{¶1} Defendant-Appellant M.J. ("Mother") appeals from the April 21, 2022 Judgment Entry of the Knox County Court of Common Pleas, Juvenile Division, granting custody of her children D.J. and J.J. to the Knox County Department of Job and Family Services ("Agency").

{¶2} The instant case is related to, but not consolidated with, In the Matter of: D.J., 5th Dist. Knox No. 22CA07.

## FACTS AND PROCEDURAL HISTORY

{¶3} Mother and Father have three biological children: T.J (age 16, in a Planned Permanent Living Arrangement which is not at issue in this appeal); D.J. (DOB 8/31/2006); and J.J. (DOB 4/26/2011).[1] "The children" will henceforth refer to D.J. and J.J.

{¶4} This case arose on August 3, 2016, when the Agency filed a motion for ex parte temporary custody of the children, which was granted. The matters have twice been refiled due to the statutory time frame for case completion, but the children have remained in the continuous custody of the Agency since August 3, 2016. On or around December 22, 2016, the Agency learned of alleged sexual abuse of the children that occurred while in Mother's custody. The children were taken to Nationwide Children's Hospital and disclosed physical and sexual abuse.

---

[1] Father is not a party to this appeal. He was never added to the case plan due to his incarceration and has made no effort to contact the Agency regarding the children. He has not visited with the children since before they were removed in 2016 and has not requested visitation.

{¶5} On November 8, 2018, the Agency filed a motion to dismiss the initial cases because the time frame for completion had elapsed pursuant to R.C. 2151.353(G). Complaints were refiled the same day. Those cases proceeded to adjudication, and on January 19, 2019 the trial court issued a judgment entry memorializing its decision but failing to comply with R.C. 2151.28(L). This Court reversed and remanded the judgment of the trial court, directing the trial court to issue findings of fact and conclusions of law in compliance with R.C. 2151.28(L). *Matters of T.J.*, 5th Dist. Knox No. 19CA02, 2019-Ohio-3626, ¶ 11.

{¶6} On June 24, 2021, the Agency again dismissed and refiled the cases to maintain compliance with R.C. 2151.353(G) as trial court case numbers 221-2069 and 221-2070, the cases at issue in the instant appeal. The complaints alleged abuse and dependency.

{¶7} On August 19, 2021, the children were adjudicated dependent by agreement of the parties, with a stipulated finding that "the minor children have suffered physical and sexual abuse and their behaviors in response to that trauma create a significant safety risk, [Mother] was not identified as a perpetrator of abuse, however, despite significant therapeutic interventions, the children cannot safely reside together in [Mother's] home." The children remained in the Agency's temporary custody following a dispositional hearing on September 23, 2021.

{¶8}  The Agency filed a motion for permanent custody on October 27, 2021, and a hearing was held on March 18, 2022. On April 21, 2022, the trial court granted the Agency's motion via judgment entry.

{¶9} The following evidence is adduced from the record of the permanent custody hearing.

{¶10} The Agency has received reports about Mother since 2003, which predates the birth of the children. The instant case arose in 2016 from allegations of an unsafe home environment in Knox County where Mother resided with Grandmother and the children. Upon investigation, the home was found to contain excessive trash and cockroaches, and the children struggled to maintain basic hygiene.

{¶11} Three different caseworkers have served as the primary caseworker in this matter; one—Parks—testified at the evidentiary hearing. Parks was the primary caseworker for less than four months.

{¶12} At removal, J.J. was 5 years old, D.J. was 9 years old, and their brother T.J. was 11 years old. The three siblings were placed together in one foster home along with their cousin ("Cousin"). The siblings later disclosed sexual abuse, some of which was allegedly perpetrated by Cousin, and Cousin was relocated. Forensic interviews of the siblings were completed at Nationwide Children's Hospital in January 2017 and sexual abuse allegations were substantiated as follows: sexual abuse by Cousin against all three siblings; physical abuse of T.J. and D.J. by Ricki Mathews; sexual abuse of D.J. by Father; and sexual abuse of T.J. by John Campbell.

{¶13} After removal, Mother had supervised visits with the children at the Agency. Parks supervised at least one of the visits, and the guardian ad litem ("GAL") supervised a visit in December 2017. Mother was appropriate with the children during these visits.

{¶14} Mother obtained an apartment and had supervised visitation with the children there, progressing to unsupervised overnight visits. One condition of Mother's

contact with the children required her to prohibit access to the internet due to the children's proclivity to seek out inappropriate sexual material. At the home visit, however, Mother provided tablets and cell phones, and the children used the devices to access pornography online. In the Agency's estimation, Mother failed to demonstrate that she understood the importance of limiting the children's access to the internet, and of the need to set boundaries, to prevent the children from offending against each other sexually. Mother's in-home visitation was terminated for this reason.

{¶15} After the beginning of the Covid pandemic, Mother began visitation with the children at a park. Mother was evicted from her apartment allegedly for lying about her custody status with the children. After the eviction, Mother lived with a friend for a few months.

{¶16} Mother now lives with her boyfriend Austin, Austin's mother, and Austin's uncle; they have lived in the apartment for six months and Mother and the other adults pay rent and utilities for the apartment. Austin does not have a criminal record but was a foster child due to substantiated abuse against him by his mother's boyfriend. The Agency has serious concerns about Austin's mother because of her history of abuse and neglect of Austin. Austin's mother lives with Mother in the apartment.

{¶17} The Agency has visited the apartment several times and Parks testified that it is relatively clean, although it is small for four adults. The G.A.L. has not visited the apartment. Mother testified that if she obtains custody of the children, she and the other adults have pledged to share rooms so that one child would have a room of his or her own. Mother also testified she will find a bigger place to live but has not applied for one as of the date of the evidentiary hearing.

{¶18} Mother's visitation with D.J. and J.J. presently takes place for one hour, every two weeks, at a local mall. Mother schedules the visits directly with the children's foster families and does not go through the Agency. The children have not visited Mother at the apartment.

{¶19} Mother's case plan required her to obtain a mental health assessment and follow all recommendations. Parks testified that Mother has neither obtained the assessment nor attended counseling; Mother believes she completed a mental health assessment several years ago and a psychological evaluation at the Agency's request. Mother believed her assessment was at BHP, but didn't know whether BHP made any further recommendations, and assumed BHP sent a report to Agency. The GAL obtained a release from Mother, but BHP did not provide any records. In short there is no evidence Mother completed a mental health assessment. The GAL recommended that Mother engage in counseling to help her understand the children's trauma and their current needs, but Mother did not follow the recommendation.

{¶20} Mother does not remember all the requirements of the case plan but believes she has completed them. She wanted the Agency to facilitate "family counseling," but family therapy was not recommended by mental health professionals until the children were willing to discuss their past trauma.

{¶21} Mother successfully completed parenting education and consistently attended available visitation with the children. Mother does not have her own vehicle but found transportation to enable her to attend visitation; she declined vouchers from the Agency and met this need herself.

{¶22} Mother has maintained employment for the past five years and has the financial means to care for the children. Mother provides direct support for individuals with disabilities, including helping them with independent living skills, and is certified in CPR. Mother works approximately 30 hours per week.

{¶23} Mother requested that the Agency place the children with her brother ("Brother") after they were removed from the first foster home and separated. The Agency rejected Brother as a possibility because Brother has custody of Cousin, the individual who allegedly perpetrated sexual abuse against the children. Brother also struggles to maintain stable housing, making him unsuitable for placement even after Cousin is emancipated. Brother has not filed anything with the trial court seeking custody of either child.

{¶24} D.J. and J.J. currently reside in separate foster homes.[2]

{¶25} J.J. was diagnosed with ADHD and PTSD after her removal from the home and has worked with three different therapists. Her current therapist has worked with her for five months and indicated J.J. has not made progress, but the therapist will continue to attempt to build trust. J.J. has cognitive delays, unhealthy boundaries, and a lack of knowledge about how to maintain her own safety. She told peers at school she enjoys inappropriate sexualized behavior, and will climb into the lap of a complete stranger unless redirected. Parks, the GAL, and J.J.'s therapist agree that she requires constant supervision to maintain her boundaries and prevent inappropriate interaction. J.J.

---

[2] The children's older brother T.J. has lived at an independent living facility two hours away for the past year, and has not had visits with Mother or the children. T.J. has behavioral issues and a pending delinquency matter; Mother does not have transportation to enable her to visit with T.J. and the Agency has not provided transportation.

struggles with school and has an IEP. J.J. is bonded with Mother but not with her siblings. She changes her mind frequently about where she would like to live, although presently her preferences, in order, are with Mother, Brother, or with her foster family.

{¶26} D.J. is generally a happy child and does well in school. He is excited to visit with Mother but does not ask about his siblings. D.J. struggled in his original foster home and disclosed sexual abuse there, but is bonded with his current foster family. His behavior deteriorated after the death of his foster mother, but he is back on track again. He is impulsive and has engaged in sexualized behaviors which have now almost stopped. He attends counseling but does not talk about past trauma; he has recanted then restated allegations of abuse. Mental health professionals recommended continued therapy. D.J. would like to live with his Mother, or else with his foster family.

{¶27} The children's past trauma and history of sexual abuse has made family counseling and living together in one household inadvisable. Although the Agency planned to engage Mother and the children in family counseling, mental health professionals recommended against it because the children are not open about their past trauma. They also recommended against allowing the siblings to reside in the same household due to their sexualized behaviors. J.J. is unable to protect herself and requires constant supervision; D.J. also lacks boundaries.

{¶28} Mother has not had custody of the children since their initial removal on August 3, 2016. The initial concerns at removal involved the physical conditions of Mother's home and the children's hygiene, but additional concerns of sexual and physical abuse arose during the pendency of the case. Mother denies knowledge of the physical and sexual abuse, and says she would have intervened if she would have known. Despite

the Agency telling her the children disclosed abuse, Mother told the trial court she was unaware of the identity of any alleged perpetrator and of the details of the abuse until she read reports from Nationwide Children's Hospital. The Agency and the GAL remain concerned about Mother's ability to care for the children due to the need for constant supervision. The Agency and the GAL also believe Mother does not understand the need for constant supervision to prevent future abuse or inappropriate sexualized behaviors.

{¶29} The motion for permanent custody was premised upon Mother's inability to set boundaries for the children; her apparent lack of understanding of the children's needs; and her lack of appropriate housing due to inappropriate adults who reside in Mother's apartment.

{¶30} Mother stated that the number of adults living in the apartment will help her supervise the children; she told the trial court she would "do the best to keep an eye on them" if they return home. She stated the children will not have internet access and she has previously grounded them for inappropriate behavior. She stated the Agency has not given her an opportunity to show that she is able to care for the children. If the trial court does not permit the children to reside in the same household, Mother stated that Brother would be willing to care for the other child.

{¶31} The GAL recommended that the trial court grant the Agency's motion for permanent custody.

{¶32} The trial court found the children have been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period.

{¶33} By an Opinion and Judgment Entry filed April 21, 2022, the trial court granted the motion of the Agency for permanent custody of D.J. and J.J. Mother now appeals from that Opinion and Judgment Entry.

{¶34} Mother raises four assignments of error:[3]

**ASSIGNMENTS OF ERROR**

{¶35} "I. THE TRIAL COURT ERRED IN RELYING UPON THE TESTIMONY OF THE RECORDS CUSTODIAN OF THE AGENCY TO THE EXTENT THAT THE TESTIMONY CONTAINED INADMISSIBLE HEARSAY."

{¶36} "II. THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY TO THE AGENCY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS NOT IN THE BEST INTEREST OF J.J. AND D.J."

{¶37} ["III.] THE TRIAL COURT PLAINLY ERRED WHEN IT FAILED TO APPLY AND ENFORCE R.C. 2151.218(A) AND (I) WITH RESPECT TO THE GUARDIAN AD LITEM FOR J.J. AND D.J."

{¶38} ["IV.] THE TRIAL COURT PLAINLY ERRED BY ADMITTING THE TESTIMONY OF THE GUARDIAN AD LITEM."

---

[3] Mother's assignments of error are numbered I., II., IV., and V. in her brief. There are four total assignments of error and III. has been omitted or mislabeled. In this opinion and the related case, we have re-numbered the four assignments of error in consecutive order.

## ANALYSIS

### I.

{¶39} In her first assignment of error, Mother argues the trial court should not have permitted the Agency's records custodian to testify to the contents of its records regarding the family's history with the Agency. We disagree.

{¶40} During the permanent custody hearing, the Agency called Danielle Swindell as a witness. Swindell's title is Social Services Administrator; she is the Agency's keeper of records. After Swindell was sworn, the following conversation was had:

* * * *.

[Counsel for the Agency]: And are you familiar with the [J.] case?

[Swindell]: I am.

[Counsel for the Agency]: Okay. And are you also the agency's keeper of records?

[Swindell]: Correct.

[Counsel for the Agency]: Okay. Can you describe for the Court what the history looks like with the agency's involvement with the [J.] family?

[Mother's Counsel]: I'm going to object, Your Honor.

THE COURT: Based on?

[Mother's Counsel]: The objection is hearsay and it is going to be an ongoing objection because the testimony is going to come from documents. I realize she is a keeper of the record and so by

being keeper of the record things can come in. However, I want it on the record that I'm objecting under the hearsay and it will be an ongoing objection to any testimony off the records by the agency.

THE COURT: How does that not fit into the records exception?

[Mother's Counsel:] I said I know she is going to be able to bring things in. I will pull this together later on.

THE COURT: You are going to pull what together later on?

[Mother's Counsel]: I'm sorry, I just wanted it on the record. You can go ahead and overrule it.

THE COURT: I need to know what the specific objection is. So nothing has been—a blanket objection to anything that she is testifying to out of a record that is kept in the normal course of business of JFS?

[Mother's Counsel]: Yes.

THE COURT: Then you know that I'm going to overrule that, if you are acknowledging that it fits into an exception of hearsay.

[Mother's Counsel]: Yes, Your Honor.

THE COURT: Okay. Then I will overrule that objection.

[Agency Counsel], you may reask the question just so we are back on the same page.

* * * *.

T. 38-40.

{¶41} Swindell then testified that the Agency's history with the family dates to 2003. There have been 23 reports of abuse, neglect, and dependency, with 5 reports "substantiated," 2 reports "indicated," and 3 reports unsubstantiated. The remaining reports are information and referrals without outcomes. The Agency had an ongoing case plan with Mother including mental health assessments, counseling, foster care services, and facilitation of visitation. Concerns arose during Mother's contact with the children including access to cell phones, pornography, and sexual material. Swindell catalogued the Agency's history with Mother's boyfriend Austin, noting Austin was a victim of substantiated neglect by his mother; the mother also lived in the apartment with Austin and Mother. Austin was sexually abused by his mother's boyfriend. Therefore, the Agency would not find Mother's apartment to be a suitable residence for the children in the instant case. Swindell noted Mother has declined Agency vouchers for transportation and found her own transportation to visitation.

{¶42} The Agency's counsel then asked Swindell whether she had concerns regarding Mother's ability to parent the children, and Swindell replied that she does not believe Mother understands the children's level of need. J.J. cannot protect herself and D.J. has inappropriate boundaries.

{¶43} On appeal, Mother argues Swindell's testimony constitutes impermissible hearsay. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). We examined a similar argument in *Matter of T.G.*, 5th Dist. Stark No. 2021CA00119, 2022-Ohio-1213. We noted that in *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 21, the Eighth District found that a social

worker's testimony as to the contents of the agency's case file is an exception to the rule against hearsay according to Evid.R. 803(6) and Evid.R. 803(8). The Eighth District stated:

> Evid.R.803(6) creates a hearsay exception for records kept in the ordinary course of business. *See In re McCullough* (Dec. 6, 2001), Cuyahoga App. No. 79212. Likewise, Evid.R. 803(8) creates a hearsay exception for public records and reports which set forth the activities of an agency or office and contain matters observed which, pursuant to a duty of law, the agency or office has a duty to report. *See In re Brown*, [sic] Athens App. No. 06CA4, 2006-Ohio-2863, at ¶32, fn.1; *In re Garvin* (June 15, 2000), [sic] Cuyahoga App. Nos. 75329 and 75410. *Id.*

{¶44} Under either exception, a social worker's testimony concerning records kept by the agency, statements made by a parent, and reports taken during the course of the agency's investigation, are admissible because the contents of her file, including the reports against the family, had been compiled as part of the Agency's activities. *Matter of D.M.*, 5th Dist. Guernsey No. 18 CA 18, 2018-Ohio-4737, ¶ 27. As such, a caseworker in a supervisory capacity may testify to the contents of the case file. *Id.,* ¶ 74.

{¶45} In the instant case, therefore, Swindell's testimony regarding the contents of the Agency's records is admissible if the testimony relates to the activities of the Agency and contains matters observed which, pursuant to a duty of law, the Agency has a duty to report. *Id.* Upon our review of the record, the properly-admissible testimony related to the history of the family with the Agency, the contents of the case plan, and the Agency's

documented objections to the apartment as a suitable residence for the children. Mother argues that Swindell's testimony that Mother failed to complete a mental health assessment and the Agency had grave concerns about the apartment due to the presence of Austin's mother are impermissible hearsay, but this evidence is admissible as portions of reports compiled as part of the Agency's activities.

{¶46} In contrast, Swindell's testimony regarding her own conclusions regarding Mother's suitability departs from cataloguing the Agency's handling of the case. Mother did not object to this testimony, however, instead making a general "continuing objection" to all of Swindell's testimony. Mother did not renew the objection to Swindell's testimony. While a continuing objection is sometimes enough to preserve error, a blanket objection to an entire witness is insufficient to provide a basis for review. See, *State v. Henness*, 79 Ohio St.3d 53, 59, 679 N.E.2d 686 (1997), citing *Brady v. Stafford*, 115 Ohio St. 67, 152 N.E.188 (1926), paragraph two of the syllabus. A continuing objection "in effect places upon the trial court the responsibility of judging each question asked and of spontaneously determining if it is objectionable. In effect, it puts the trial court in the position of being assistant counsel. If there is reason to object to a specific question, the objection should be made and the reason given." *State v. Jackson*, 3rd Dist. Allen No. 1-85-10, unreported, 1986 WL 9294, *3. For purposes of our review, we find Mother's continuing objection inadequate. See also, *In re A.R.*, 9th Dist. Summit No. 22836, 2006-Ohio-1548, ¶ 7 [review of the record does not support Father's argument that continuing objection was sufficient to preserve specific arguments and should have been renewed].

{¶47} The status of Mother's objection matters to our standard of review. Finding Mother's continuous objection to Swindell's testimony insufficient, we review the issue for

plain error. See, *In re E.L.*, 8th Dist. Cuyahoga No. 110171, 2021-Ohio-1495, ¶ 28 ["Rather, counsel for Mother raised a continuing objection to the introduction of hearsay testimony, which was predicated on testimony concerning the contents of the agency's case file and was unrelated to the results of Mother's drug tests at Cleveland Treatment Center. Thus, Mother has forfeited her right to raise these issues on appeal absent a claim of plain error."] Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, citing *State v. Morales*, 10 Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19 (citation omitted). The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes*, supra, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶48} We find no plain error in the admission of any of Swindell's testimony. Even the testimony regarding Mother's custodial suitability was reiterated elsewhere during the hearing by Parks, the ongoing caseworker, and the GAL. The Agency pursued permanent custody because Mother demonstrated an inability to understand the children's need for constant supervision and enforcing of boundaries. The trial court

therefore did not commit plain error in permitting Swindell to testify regarding her concerns about Mother's parenting.

{¶49} We find no plain error in the trial court's handling of Swindell's testimony. Mother's first assignment of error is overruled.

## II.

{¶50} In her second assignment of error, Mother argues the trial court erred in granting permanent custody of the children to the Agency because the decision was not supported by clear and convincing evidence, was against the manifest weight of the evidence, and was not in the children's best interests. We disagree.

**Standard of Review**

{¶51} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

(a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing

agencies for twelve or more months of a consecutive twenty-two-month period * * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶52} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶53} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶54} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not

be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶55} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *see also C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74.

{¶56} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The

underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; *In re: C.W.,* 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

### Finding pursuant to R.C. 2151.414(B)(1)(d)

{¶57} The trial court determined that pursuant to R.C. 2151.414(B)(1)(d), D.J. and J.J. were in the temporary custody of the Agency for twelve months of a consecutive twenty-two-month period. Mother does not dispute this fact. This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *Matter of O.M.*, 5th Dist. Coshocton No. 20CA0017, 2021-Ohio-1310, 2021 WL 1424200, ¶ 33 citing *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

### Best interest of D.J. and J.J.

{¶58} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent,

and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶59} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶60} Mother argues the trial court did not take into consideration her consistent visitation with the children, her bonds with them, and the children's desire to be reunited with Mother.

{¶61} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives

of the parties concerned." *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, 2022 WL 1579856, ¶ 101 quoting *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶62} In this case, we find there was competent, credible evidence to support the juvenile court's decision that it was in the best interest of D.J. and J.J. to be placed in the permanent custody of the Agency. Although Mother alleviated some of the concerns that led to the initial removal of the children from the home, even more significant concerns arose when the children became victims of physical and sexual abuse, and Mother did not understand the extent to which she would need to supervise them constantly. The GAL recommended that permanent custody was in the best interest of the children. Unfortunately, despite Mother's efforts, her residence remained unsuitable due it its size and the people who live there, and Mother has not demonstrated that she is capable of adequately supervising the children.

{¶63} Mother argues that she was appropriate in visitation with the children, but the evidence also established that although she was told the children should not have access to the internet, she provided them with devices they used to access pornography and inappropriate material. Mother argues it was the foster placement where the children were victimized, which is true, but they were victimized in part by Cousin who resides with Brother, whom Mother suggested as a kinship placement. Ultimately, we must agree with the trial court that the children cannot be put at risk while Mother figures out how significant their needs are. Despite Mother's arguments that she did seek a mental health

assessment, would arrange her apartment to suit the children's needs, and does know what those needs are, her self-serving testimony is not supported by any evidence.

{¶64} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore D.J. and J.J. could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to the Agency was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶65} Mother's second assignment of error is overruled.

### III., IV.

{¶66} Mother's third and fourth assignments of error are related and will be addressed together. Mother argues that the trial court erred in admitting the testimony of the GAL because the GAL failed to comply with R.C. 2151.281(D) and (I). We disagree.

{¶67} R.C. 2151.281 governs a GAL's duties and provides the GAL "shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency * * *." There is no specific requirement contained in R.C. 2151.281 that a GAL must interview the parents or observe them with the child. R.C. 2151.281 instructs the Ohio Supreme Court to adopt rules regarding the duties a GAL should perform when protecting the interest of a child. The Ohio Supreme Court has done so in Superintendence Rule 48.

{¶68} Rule 48(D) of the Ohio Rules of Superintendence is a lengthy statement of the basic responsibilities of a GAL serving in an Ohio court, which are to be performed "unless impracticable or inadvisable to do so." These responsibilities include representing the best interest of the child for whom the GAL is appointed, maintaining independence, objectivity, and fairness, acting as an officer of the court, participating in pertinent hearings, resolving any conflicts of interest that may arise, meeting qualifications and training requirements, making reasonable efforts to become informed about the case, contacting the parties, maintaining confidentiality, and numerous other considerations.

{¶69} We have recognized that Superintendence Rule 48 is a general guideline that does not have the force of statutory law, and therefore an appellant does not have any substantive right to enforce it. *In the Matter of D.S.*, 5th Dist. Fairfield No. 15 CA 30, 2016-Ohio-79; *Rice v. Rice*, 5th Dist. Delaware No. 10 CAF 11 0091, 2011-Ohio-3099. In general, the Ohio Rules of Superintendence are "purely internal housekeeping rules which do not create substantive rights in individuals or procedural law." *Elson v. Plokhooy*, 3rd Dist. Shelby No. 17-10-24, 2011-Ohio-3009.

{¶70} Further, most importantly for purposes of due process, the GAL was present at the evidentiary hearing and testified. *IN RE: K.A.*, 5th Dist. Fairfield No. 2021 CA 00004, 2021-Ohio-1773, ¶ 46. Mother appeared with counsel and had the opportunity to cross examine the GAL.

{¶71} Additionally, the trial court, as the trier of fact, is permitted to assign weight to the GAL's testimony and recommendation and to consider it in the context of all the evidence before the court. *K.A.*, supra, 2021-Ohio-1773, at ¶ 48, citing *In the Matter of D.S.*, 5th Dist. Fairfield No. 15 CA 30, 2016-Ohio-79. The decision of whether to consider

a GAL report, even when the guardian did not fully comply with Superintendence Rule 48, is within a trial court's discretion. *Id.,* citing *Corey v. Corey*, 2nd Dist. Greene No. 2013-CA-73, 2014-Ohio-3258.

{¶72} Mother argues the GAL's actions in the instant case were deficient and compromised her testimony, to the extent that the trial court erred in permitting the GAL to testify. Mother relies upon *In re A.S.,* 10th Dist. Franklin No. 21AP-249, 2022-Ohio-1861, but we find that case to be distinguishable.

{¶73} First, as in *A.S.,* Mother in the instant case failed to object to admission of the GAL's testimony and report, and we therefore review this argument for plain error. *Id.,* ¶ 54, citing *Matters of D.T.*, 5th Dist. Knox No. 20 CA 000004, 2020-Ohio-3808, ¶ 62.

{¶74} In *A.S.,* the Tenth District held that a GAL failed to faithfully discharge his duties because, e.g., his written report contained errors of fact; he met with the children only once in three years; he never observed a visitation with the parents and children; he didn't ascertain the child's wishes; and he failed to contact significant individuals in the case including the parties and foster parents. *Id.* In short, the GAL failed to comply with virtually every tenet of R.C. 2151.281. The Court noted, however, that *A.S.* is the rare case in which the GAL so completely failed to discharge his responsibilities that he did not act in the best interests of the children and the trial court committed plain error in accepting his reports and testimony. *Id.,* ¶ 54.

{¶75} *A.S.* is distinguishable from the instant case. Here, Mother argues the GAL could not remember the names of J.J.'s counselor and one of the caseworkers, did not personally visit Mother's current apartment, and did not attend any visitations between June 2021 (filing of the permanent custody complaint) and March 2022 (date of the

permanent custody hearing). The Agency responds that Mother mischaracterized the GAL's efforts, pointing to the Amended Guardian Ad Litem Report of March 14, 2022, Appendix C to the Agency's brief. In contrast with the deficiencies of the GAL in *A.S.,* the GAL in the instant case contacted the relevant parties; reviewed the case file, hospital records, counseling records, school records, and discovery; ascertained the children's wishes; and personally observed visitation at the Agency in December 2017. We find no evidence the GAL was deficient in the performance of her duties comparable to the extent of the GAL in *A.S.*

{¶76} Upon our review of the record, we find the trial court did not abuse its discretion in its treatment of the testimony and report of the GAL. Superintendence Rule 48 does not create substantive rights. *IN RE: K.A.*, supra, 2021-Ohio-1773, ¶ 49. We find no reversible error, particularly where the trial court has the discretion to follow or reject any recommendation of a GAL. *Id.,* citing *Wine v. Wine*, 5th Dist. Delaware No. 04 CA F 10, 068, 2005-Ohio-975.

{¶77} Mother's third and fourth assignments of error are overruled.

## CONCLUSION

{¶78} Mother's four assignments of error are overruled and the judgment of the Knox County Court of Common Pleas, Juvenile Division is affirmed.


By:  Delaney, J.,

Wise, John, P.J. and

Baldwin, J., concur.