[Cite as *In re E.M.*, 2023-Ohio-2141.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.M. | : | APPEAL NO. C-220481 |
| | | TRIAL NO. F-16-0601Z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 28, 2023

*Barr, Jones & Associates, LLP*, and *Monica L. Welker*, for Appellant Mother,

*Alex van der Zee*, for Appellee Father.

**WINKLER, Judge.**

{¶1} Appellant mother appeals the judgment of the juvenile court terminating an order of shared parenting between mother and appellee father and granting custody of their child, E.M., to father.

## Background

{¶2} Mother gave birth to E.M. in July 2015. Mother and father agreed to a shared-parenting plan in August 2017. In July 2018, father moved to modify the shared-parenting plan and for the appointment of a guardian ad litem ("GAL"). In October 2018, the magistrate entered an order reflecting that mother had reported father to child-protective services for alleged sexual abuse of E.M., and that mother also attempted to take E.M. to the Mayerson Center for an examination, but the staff declined to interview E.M. The magistrate ordered that neither parent subject E.M. to an interview, counseling, or therapy without first permitting the GAL to investigate.

{¶3} In June 2019, father filed a motion to terminate shared parenting on the basis that mother had repeatedly made false sexual-abuse allegations against him regarding E.M. In November 2019, the GAL filed a report, which recommended custody to father. In general, the GAL's report outlined that mother had an ongoing concern about sexual abuse of E.M. occurring at father's home, despite authorities' investigation concluding that no abuse had occurred. The GAL determined that mother's preoccupation with father's alleged sexual abuse of E.M. interfered with mother's ability to honor shared parenting. The GAL also believed that mother had an attachment issue regarding E.M. as evidenced by mother's co-sleeping with and breastfeeding of E.M., and a report from a psychological evaluation of mother.

**{¶4}** The matter proceeded to trial before a magistrate in November 2019 with the testimony of an investigator from the Hamilton County Department of Job and Family Services ("HCJFS") and a police officer, both of whom had investigated the abuse allegations mother made against father in June 2019. Mother reported to investigators that E.M. had told her that father "sucked and licked her vagina." Father cooperated with investigators, and both HCJFS and the police determined that the allegations were unsubstantiated.

**{¶5}** Mother testified that she first suspected abuse in July 2018 after she noticed that E.M. had redness in her vaginal area. Mother reported concerns to E.M.'s pediatrician, who told mother that if she had concerns to call the Mayerson Center. Mother reportedly called the Mayerson Center, but the staff did not conduct an interview of E.M. Mother reported concerns to the Mayerson Center again in October 2018. This time mother reported redness in E.M.'s vaginal area and also reported that she saw a black hair in E.M.'s underwear or diaper. No interviews were conducted. Mother called the Mayerson Center in February 2019, and again, E.M. was not interviewed. In May 2019, mother took E.M. to the pediatrician, because of the ongoing redness and soreness in E.M.'s vaginal area. The pediatrician did not note anything unusual during E.M.'s exam. Mother testified that she called the Mayerson Center again in June 2019, after E.M. told her that her father had inappropriately touched her, which instigated investigations by HCJFS and police.

**{¶6}** The juvenile court continued the trial on father's custody motion, but before the trial could resume, the COVID-19 pandemic occurred. The trial on father's motion did not resume until November 2020 with additional testimony from the HCJFS investigator and father's mother.

3

{¶7} The juvenile court then continued the custody trial again until April 2021. The trial proceeded with testimony from the court-appointed GAL. The GAL testified that she maintained her recommendation that father have custody of E.M. The GAL based her recommendation on mother's reports of sexual abuse, mother's delay in exchanging E.M., mother's attachment issues related to E.M., and the psychological report of mother, which showed that mother had resentment and distrust of father. The GAL reported that mother breastfed E.M. as late as the fall of 2020, when E.M. was five years old, and that mother and E.M. slept in the same bed. The GAL also reported that mother had issues with stable housing. Mother's home was currently in foreclosure, although the proceedings had been stayed during COVID, and mother had six eviction actions against her between 2009 and 2016. The GAL also believed that E.M. was bonded to father, and the GAL had no concerns regarding his parenting ability or his ability to uphold any court-ordered parenting time with mother.

{¶8} The magistrate continued the matter for decision. In October 2021, the magistrate entered his decision finding that E.M.'s best interest would be served by granting father's custody motion and terminating shared parenting. Mother filed objections. In August 2022, the juvenile court overruled mother's objections, conducted a best-interest analysis, and adopted the decision of the magistrate. Mother appeals.

**Delay in Proceedings**

{¶9} In mother's first assignment of error, she argues that the juvenile court erred in deciding father's custody motion four years after it was filed.

**{¶10}** Mother acknowledges that the COVID-19 pandemic impacted court operations from March 2020 through July 2020, and that the pandemic caused a backlog of cases in the juvenile court. Mother asserts that, after July 2020, the juvenile court "was unprepared and without resources" to hear custody cases, and, as a result, mother lost custody because of actions that occurred two years prior. Mother argues that by the time of the final trial hearings, mother no longer breastfed or co-slept with E.M., and she no longer believed that father was sexually abusing E.M.

**{¶11}** Mother relies on the Ohio Rules of Superintendence, which provide a 90-day timeline for a court's determination after a trial, and a 120-day timeline for a court's ruling on a submitted motion. *See* Sup.R. 40. Sup.R. 40 does not carry the force of law. "In general, the Ohio Rules of Superintendence are 'purely internal housekeeping rules which do not create substantive rights in individuals or procedural law.' " *In re K.A.*, 5th Dist. Fairfield No. 2021 CA 00004, 2021-Ohio-1773, ¶ 45, quoting *Elson v. Plokhooy*, 3d Dist. Shelby No. 17-10-24, 2011-Ohio-3009.

**{¶12}** Mother never objected in the juvenile court to the delay in the trial proceedings, presumably because any delay in the trial proceedings maintained the status quo of shared parenting from which mother benefitted, and therefore mother has waived all but plain error. *See* Juv.R. 40(D)(3)(b)(iv); *In re A.M.*, 12th Dist. Clermont Nos. CA2022-12-092 and CA2022-12-093, 2023-Ohio-1523, ¶ 17.

**{¶13}** The delay in this case was extraordinary, but so was the COVID-19 pandemic. In granting father custody of E.M., the juvenile court considered the age of the GAL's report by the time of trial, and the court weighed it accordingly. The juvenile court did not find that mother still breastfed or co-slept with E.M., but instead, the juvenile court found that mother's lack of trust and abuse accusations towards father

5

damaged mother and father's shared-parenting relationship, and the juvenile court weighed that heavily in awarding custody to father. Mother cannot demonstrate that the juvenile court's continuances of trial and decision on father's custody motion constituted an error that prejudiced her.

{¶14} We overrule mother's first assignment of error.

## Best-Interest Determination

{¶15} In her second and third assignments of error, mother argues that the juvenile court erred in awarding custody to father by relying on "stale evidence" that no longer related to E.M.'s best interest, and in relying on mother's breastfeeding and co-sleeping with E.M.

{¶16} According to mother, the juvenile court awarded father custody based on the GAL's 2019 report. The GAL faulted mother for E.M.'s difficult transitions, even though the GAL had observed only one transition. Mother also takes issue with the juvenile court's reliance on mother's prior breastfeeding of and co-sleeping with E.M., which had not occurred for years by the time of the juvenile court's decision in 2022. Mother also argues that the psychological evaluation and mother's reports regarding father's alleged sexual abuse had not occurred for two years prior to the juvenile court's decision. Finally, mother argues that breastfeeding and co-sleeping should not be considered in the best-interest analysis, and those decisions should be left to parents and pediatricians.

{¶17} In determining custody matters, the juvenile court must determine the best interest of the child, and in doing so, must consider the statutory factors in R.C. 3109.04(F)(1). *Davidson v. Hodge*, 1st Dist. Hamilton No. C-220241, 2023-Ohio-1638, ¶ 13. R.C. 3109.04(F) provides:

6

(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any

criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶18} In this case, mother wished to continue shared parenting, so the juvenile court also considered whether shared parenting is in E.M.'s best interest by considering the factors in R.C. 3109.04(F)(2):

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶19} This court reviews the juvenile court's custody determination for an abuse of discretion. *Davidson* at ¶ 12.

{¶20} The juvenile court analyzed the best-interest factors in R.C. 3109.04(F)(1) in determining that E.M.'s best interest would be served by granting

custody to father. The juvenile court determined that mother wished to continue shared parenting, father wanted legal custody, and E.M.'s wishes had not been expressed to the court. *See* R.C. 3109.04(F)(1)(a)-(b). The juvenile court determined that mother's actions in repeatedly conducting invasive physical exams had affected E.M.'s best interest, and that mother had reported that E.M. did not want to go to father's home for visits, but that the GAL did not witness such behavior and found E.M. was bonded with father. *See* R.C. 3109.04(F)(1)(c)-(d). The juvenile court found that father would be more likely to honor parenting time or visitation, and although the juvenile court did not elaborate, the evidence presented at trial showed that mother repeatedly failed to have E.M. ready for father's visits and that mother failed to comply with the October 2018 order of the court to inform the GAL and allow the GAL to investigate prior to subjecting E.M. to interviews. *See* R.C. 3109.04(F)(1)(f).

**{¶21}** The juvenile court then discussed the best-interest factors in R.C. 3109.04(F)(2) regarding shared parenting. The juvenile court determined that mother had an extreme distrust of father, and that she had made numerous allegations of sexual abuse against father, all of which had been unsubstantiated. Mother continued to make allegations against father even after a court order prohibiting mother from making such allegations without speaking to the GAL. The juvenile court also determined that mother had admitted to the GAL that she put a listening device in E.M.'s belongings to eavesdrop on father's parenting time. Finally, the juvenile court considered the GAL's recommendation to award custody to father. The juvenile court considered that the GAL's report had been completed in 2019, nearly three years prior, and that the GAL had spent limited time with the parties in person. The court noted that the GAL testified at trial, and that the GAL did not change her recommendation.

**{¶22}** The juvenile court's analysis is supported by the evidence at trial. Other than a brief reference to the GAL's report, the juvenile court did not rely on "stale" evidence. The juvenile court specifically noted that it had considered the age of the GAL's report and gave the report its appropriate weight. The juvenile court gave little weight to mother's co-sleeping with or breastfeeding of E.M. in its decision by only mentioning in its recitation of the evidence that mother is very attached to E.M. as shown by mother breastfeeding E.M. until she was over four years old, and allowing E.M. to sleep in her bed, which resulted in late bedtimes. Ultimately, the juvenile court weighed mother's lack of trust and accusations towards father most heavily in terminating shared parenting and awarding custody to father. This was not an abuse of discretion.

**{¶23}** We overrule mother's second and third assignments of error.

### Overruling Mother's Objections

**{¶24}** In mother's fourth assignment of error, she argues that the juvenile court erred in overruling her objections without separately analyzing each objection.

**{¶25}** In her objections to the magistrate's decision, mother filed 17 separate and lengthy objections, all of which challenged the magistrate's findings of fact and conclusions of law after trial. Mother admits that the juvenile court overruled her objections, but she argues that the juvenile court should have separately considered each objection.

**{¶26}** Juv.R. 40(D)(4)(d) states, in pertinent part, that "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review

as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

**{¶27}** Nothing in Juv.R. 40 or the case law requires the juvenile court to provide a separate, written analysis when overruling each objection. The juvenile court's decision complies with Juv.R. 40(D)(4)(d)—it contains an independent review of the evidence presented at the custody trial, and it also contains an independent, thorough analysis of the best-interest factors with a conclusion that E.M.'s best interest would be served by granting father's custody motion.

**{¶28}** Because the juvenile court did not fail to rule on mother's objections, we overrule mother's fourth assignment of error.

## Conclusion

**{¶29}** Having overruled mother's assignments of error, we affirm the judgment of the juvenile court.

Judgment affirmed.

**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.